IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 23-cv-02570-NYW-STV

NATALIE ARCHULETA,

    Plaintiff,

v.

AMF BOWLING CENTERS, INC.

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant AMF Bowling Centers, Inc.'s Motion for Summary Judgment ("Motion"). [Doc. 76, filed November 6, 2024]. Plaintiff responded, [Doc. 77 ("Response")], and Defendant replied, [Doc. 78 ("Reply")]. Upon review of the Motion, the related briefing, the applicable case law, and the record before the Court, the Court concludes that oral argument would not materially assist in the resolution of this matter. Upon consideration of the Motion and related briefing, the Court respectfully **GRANTS in part** and **DENIES in part** the Motion for the reasons set forth herein.

## BACKGROUND

Natalie Archuleta ("Plaintiff" or "Ms. Archuleta") brought suit against Defendant AMF Bowling Centers, Inc. ("Defendant" or "AMF"), asserting nine claims: premises liability ("Claim 1"), [Doc. 34 at ¶¶ 38–62]; negligence ("Claim 2"), [*id.* at ¶¶ 63–77]; negligent hiring, training, and supervision ("Claim 3"), [*id.* at ¶¶ 78–87]; negligent

misrepresentation causing physical harm ("Claim 4"), [*id.* at ¶¶ 88–94]; negligence per se ("Claim 5"), [*id.* at ¶¶ 95–107]; strict product liability ("Claim 6"), [*id.* at ¶¶ 108–18]; a breach of the implied warranty of merchantability ("Claim 7"), [*id.* at ¶¶ 119–30]; a breach of the implied warranty of wholesomeness of food ("Claim 8"),[1] [*id.* at ¶¶ 131–39]; and respondeat superior ("Claim 9"), [*id.* at ¶¶ 140–47].[2]  Ms. Archuleta alleges that she suffered injuries and damages due to an allergic reaction she suffered after eating food at an AMF Bowling facility ("Premises") on March 12, 2022 when she visited the Premises with her husband and son ("Incident").  [*Id.* at ¶¶ 6–37].

Defendant removed the case to the United States District Court for the District of Colorado on October 2, 2023.  [Doc. 1].  Defendant now seeks summary judgment in its favor on Plaintiff's claims "in their entirety, or at minimum, in part."  [Doc. 76 at 2].  First, Defendant argues that Plaintiff has not produced any evidence that Defendant served her any contaminated food at the Premises that caused an allergic reaction.  [*Id.* at 4–9].  To that end, AMF argues that res ipsa loquitur does not apply to Claims 1–5 sounding in negligence and her injury alone cannot establish product liability as pleaded in Claims 6–

---

[1] It is unclear how Claim 7 and Claim 8 differ.  The implied warranty of wholesomeness of food derives from the implied warranty of merchantability.  *See* Colo. Rev. Stat. § 4-2-314; *Gangemi v. AMF Bowling Ctrs., Inc.*, 722 F. Supp. 3d 1170, 1175 (D. Colo. 2024) (recognizing that the breach of the implied warranty of merchantability is the implied warranty claim that is most commonly applicable to foot litigation (citing Jordan Lipp and Ed Hafer, *What's in the Package:  Food, Beverage and Dietary Supplement Law and Litigation—Part I*, 43-Jul Colo. Law. 77, at *81–82 & n.103 (July 2014))); *Gonzales v. Safeway Stores, Inc.*, 363 P.2d 667, 669 (Colo. 1961).  Here, the only product at issue is food served by Defendant.  As a result, the Court **ORDERS** Plaintiff to **SHOW CAUSE** as to why Claim 7 should not be dismissed as duplicative of Claim 8.

[2] Plaintiff also brought seven claims for relief against Defendant Sysco USA I, Inc. ("Defendant Sysco").  [Doc. 34 at ¶¶ 148–228].  The Court dismissed Defendant Sysco from the action on February 23, 2024 upon the Stipulation of Dismissal of Defendant Sysco USA I, Inc Only, [Doc. 49], which the Court construed as a self-effectuating notice of dismissal under Rule 41(a)(1)(a)(i), [Doc. 51].

8. [*Id.* at 9–10]. Second, Defendant argues that, in the alternative, the Colorado Premises Liability Act ("PLA") explicitly preempts Plaintiff's claims in common law negligence. [*Id.* at 10–12]. Third, again in the alternative, Defendant argues that a contaminated food item cannot form the basis of a claim under the PLA. [*Id.* at 12–14].

In her Response, Ms. Archuleta argues that she has adduced sufficient circumstantial evidence that she was served contaminated food at the Premises, [Doc. 77 at 7–16]; that res ipsa loquitur does apply, [*id.* at 16–19]; and that her allegation that Defendant violated Colorado Retail Food Establishment Rules and Regulations is sufficient to avoid summary judgment as to her product liability claims, [*id.* at 19]. She concedes that if the PLA applies, her common law negligence claims (Claims 2–5) are not viable, but she asserts that her claims for strict product liability, implied warranty of merchantability, and implied warranty of wholesomeness of food (Claims 6–9) would remain viable. [*Id.* at 19–20]. Ms. Archuleta does not appear to address Defendant's third argument directly. *See* [*id.*]. In Reply, Defendant again argues that Plaintiff fails to demonstrate any genuine issue of material fact and urges this Court to grant summary judgment in its favor on all claims. [Doc. 78 at 3–11].

## LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194

3

(10th Cir. 2011) (citation and quotations omitted).

A movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant must only point the Court to a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Once the movant has met this initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation omitted). The nonmovant must point to competent summary judgment evidence to satisfy its burden, and conclusory statements based on speculation, conjecture, or subjective belief are insufficient. *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004); *see also* 10B Wright & Miller's *Federal Practice and Procedure* § 2738 (4th ed. May 2025 update) (explaining that the nonmovant cannot rely on "mere reargument of a party's case or a denial of an opponent's allegations" to defeat summary judgment). When considering the evidence in the record, the Court cannot and does not weigh the evidence or determine the credibility of witnesses. *Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008). At all times, the Court views the record in the light most favorable to the nonmoving party. *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019).

## UNDISPUTED MATERIAL FACTS

The material facts below are drawn from the summary judgment record, as well as the docket as a whole,[3] and are undisputed unless otherwise noted.

---

[3] In considering the Motion, the Court may consider other materials in the record. Fed. R. Civ. P. 56(c).

4

1. On or about March 12, 2022, Ms. Archuleta was a patron of AMF Bowling located at 4900 S. Federal Boulevard, Englewood, Colorado. [Doc. 34 at ¶ 10; Doc. 37 at ¶ 10].

2. As of March 12, 2022, AMF was engaged in the business of selling food products. [Doc. 26 at 3 ¶ 3].

3. On March 12, 2022, Plaintiff Archuleta was an "invitee" as defined pursuant to the PLA, Colo. Rev. Stat. §13-21-115(7)(a). [Doc. 26 at 3 ¶ 2].

4. Plaintiff knew she had a severe allergy to shellfish ("Allergen"). [Doc. 76 at ¶ 3; Doc. 77 at 4 ¶ 3; Doc. 34 at ¶ 12].

5. On the night of the Incident, Plaintiff ordered pizza and chicken wings to eat at the Premises. [Doc. 76 at ¶ 7; Doc. 77 at 4 ¶ 7; Doc. 34 at ¶ 11].

6. Plaintiff consumed one or more drinks at her home prior to going to the Premises. [Doc. 76 at ¶ 8; Doc. 77 at 4 ¶ 8; Doc. 76-1 at 74:10–16, 75:1–14].[4]

7. Plaintiff's family members stored food from outside their home within the home's refrigerator. [Doc. 76 at ¶ 9; Doc. 77 at 4 ¶ 9; Doc. 76-2 at 26:4–16].

8. Plaintiff had previously suffered allergic reactions, some of which required medical attention, [Doc. 76 at ¶ 9;[5] Doc. 77 at 4 ¶ 9 (sic); Doc. 76-1 at 123:5–125:13], and Plaintiff was not carrying an Epi-Pen at the time of the Incident, [Doc. 76 at ¶ 10; Doc. 77

---

[4] When citing to a filing on the docket in this action, this Court uses the convention [Doc. __] and cites to the page number assigned by the District's Electronic Case Files ("ECF") system. With respect transcripts of hearings or depositions, the Court cites to the page and line number from the original transcript for the sake of consistency.

[5] The Court notes that Defendant's Motion for Summary Judgment indicates paragraph nine twice. See [Doc. 76 at 3]. Plaintiff refers to Defendant's second paragraph nine by indicating "9. (sic)" in her Response. [Doc. 77 at 4]. When referring to Plaintiff's Response, the Court will follow Plaintiff by using "(sic)" to refer to the second instance of paragraph nine.

at 4 ¶ 10; Doc. 76-1 at 35:16–17].

9. Plaintiff was assured by the waitress at the Premises that the cook would be notified of her allergy. [Doc. 77 at 6 ¶ 1; Doc. 78 at ¶ 1; Doc. 77-2 at 3].

10. Plaintiff spoke with the manager and was told that Defendant did not serve the Allergen or cross-contaminate foods. [Doc. 77 at 6 ¶ 2; Doc. 78 at ¶ 2; Doc. 77-2 at 3].

11. After the Incident, Richard Brown, the bowling alley's general manager, went to the store and purchased Benadryl for Plaintiff. [Doc. 77 at 6 ¶ 3; Doc. 78 at ¶ 3; Doc. 77-14 at 16:13–25].

12. An ambulance arrived at the Premises and picked up Ms. Archuleta. [Doc. 26 at 3 ¶ 6].

13. The Allergen was cooked in the fryer of the Premises at least as of December 21, 2021 through January 1, 2022. [Doc. 77 at 7 ¶ 7; Doc. 78 at ¶ 7].

## ANALYSIS

### I. Contaminated Food

First, Defendant argues that Plaintiff has not produced any evidence that Defendant served her any contaminated food at the Premises that caused an allergic reaction, and thus all of her claims must be dismissed with prejudice. [Doc. 76 at 4–10]. Whether Ms. Archuleta suffered an allergic reaction due to Defendant's conduct is "essential to the proper disposition of the claim." *Crowe*, 649 F.3d at 1194 (quotation omitted). Specifically, Defendant asserts that it did not "serve, possess, or offer, food containing Plaintiff's [A]llergen." [Doc. 76 at 4 (emphasis omitted)]. In support, Defendant directs the Court to evidence including its sanitation standards, the fact that the Allergen

6

did not appear on its menu, and deposition testimony from its employees that the Allergen was not on the menu and not on the Premises on the date of the Incident. [Doc. 76 at 5–9]. Defendant further argues that Plaintiff cannot establish negligence required for Claims through a theory of res ipsa loquitur. [*Id.* at 9–10]. With respect to Plaintiff's product liability claims, AMF also argues that summary judgment is appropriate because these claims cannot be established through a single injury. [*Id.* at 10].

Here, Ms. Archuleta bears the burden of proof at trial on all her causes of action, so AMF may prevail on summary judgment by demonstrating the nonmoving party lacks (1) evidence proving an essential element of the claim and (2) material facts creating a disputed issue. *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1180 (10th Cir. 2018). Defendant argues that Plaintiff lacks evidence on an essential element of her claim, thus, the burden shifts to Ms. Archuleta to adduce sufficient evidence to create a genuine issue of material fact to show that there is a genuine, triable issue. *See Johnson v. City of Roswell*, 752 F. App'x 646, 649 (10th Cir. 2018); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).

In reviewing record as a whole and drawing all inferences in favor of Plaintiff, this Court concludes that Ms. Archuleta has adduced sufficient evidence to create a genuine issue of material fact as to whether she was served food at the Premises that was cross-contaminated by the Allergen, including, but not limited to:

(1) Prior to the Incident, Allergen was purchased for the Premises between March 4, 2020 and March 2, 2021, [Doc. 77-8 at 1; Doc. 77-9 at ¶¶ 3–5; Doc. 77-10], and the Allergen had been in the building as of January 1, 2022, [Doc. 78 at 3 ¶ 7].

(2) The purchased Allergen had a shelf life of 730 days. [Doc. 77-10].

7

(3)     At the time of the Incident, the Allergen appeared on the catering menu of the Premises.  [Doc. 76-11 at 2–3].

(4)     At least one employee testified that he had seen the Allergen at the Premises.  [Doc. 77-11 at 43:10–12].

(5)     Defendant borrowed food from other facilities and purchased food from local grocery stores.  [Doc. 77-14 at 109:22–25; Doc. 77-15 at 29:3–7].

(6)     The Allergen was cooked in its fryer during certain "unusual times . . . previously" to March 12, 2022.  [Doc. 78-1 at 30:18–31:15].

(7)     The Allergen and chicken were both cooked in the fryers.  [Doc. 77-14 at 27:2–10, 29:17–30:02].

(8)     Employees are permitted to bring food in, cook in the kitchen, use the fryer, and eat it on the Premises, and Defendant did not specifically track what was brought in or how it was cooked.  [Doc. 77-14 at 55:20–56:14].

(9)     Defendant did not offer specific training on how to address a situation where a customer informed an employee that she had food allergies, [Doc. 77-16 at 10:12–18], or regarding the handling of food and cross-contamination, [Doc. 77-15 at 7:21–25].

(10)    Ms. Archuleta had not eaten any food prior to arriving at the Premises and the drink she consumed was from a bottle.  [Doc. 76-1 at 74:1–75:5].

(11)    Ms. Archuleta ate chicken that was served to her, and within seconds, she had a metallic taste in her mouth, salivated, had stomach cramps, became delusional, disoriented, faint, confused, itchy, and started having difficulty breathing.  [Doc. 77-2 at 3].

(12)    Ms. Archuleta's board-certified immunologist testified that anaphylactic

8

shock "usually happens pretty quickly, within minutes" of ingesting an allergen. [Doc. 77-3 at 21:4–14].

While Defendant insists that there was no Allergen onsite on the date of the Incident, the Court finds it inappropriate to grant summary judgment on this basis. *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) ("Material factual disputes cannot be resolved at summary judgment based on conflicting affidavits."). Indeed, Defendant's arguments invite this Court to weigh the evidence before it, which it cannot do. It is well-settled that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge" at summary judgment. *Anderson*, 477 U.S. at 255. Construing all evidence and inferences before it in the light most favorable to Plaintiff, this Court respectfully concludes there is a genuine issue of material fact as to whether Ms. Archuleta ingested food that was cross-contaminated with the Allergen on Defendant's Premises on March 12, 2022.[6]

## II.   Single Injury

Defendant further argues that even if Ms. Archuleta can survive summary judgment with respect to the factual issue of contaminated food, her claim for "product

---

[6] "Colorado courts have long held that *res ipsa loquitur* is not an independent substantive cause of action, but rather a rule of evidence affecting the burden of proceeding which is peculiar to the law of negligence." *Kaplan v. C Lazy U Ranch*, 615 F. Supp. 234, 236 (D. Colo. 1985). "Res ipsa loquitur is a common-law evidentiary rule that creates a rebuttable presumption that the defendant was negligent." *Chapman v. Harner*, 339 P.3d 519, 521 (Colo. 2014). As discussed more fully below, this Court finds that the PLA preempts Plaintiff's common law claims for negligence. *See infra* Section III. Accordingly, this Court need not reach Defendant's arguments with respect to res ipsa loquitur because this Court predicts that the Colorado Supreme Court would find that such doctrine does not apply to a claim under the PLA. *See Hand v. Signature Flight Support, LLC*, No. 21-cv-00113-RMR-STV, 2023 WL 3279675, at *5 n.3 (D. Colo. Mar. 1, 2023).

liability"[7] cannot survive because a single injury does not establish that the product was defective or unreasonably dangerous. [Doc. 76 at 10]. Plaintiff responds by arguing that whether a product is unreasonably dangerous because of defect is generally a question of fact and referring back to her allegations that AMF violated the Colorado Retail Food Establishment Rules and Regulations, which triggers a rebuttable presumption that the product is dangerous. [Doc. 77 at 19 (citing [Doc. 34 at ¶¶ 96–106])].

"A manufacturer's strict liability in tort does not rest upon the normal negligence rules, but upon the concept of enterprise liability for casting a defective product into the stream of commerce." *Kysor Indus. Corp. v. Frazier*, 642 P.2d 908, 911 (Colo. 1982). Plaintiff's injury alone is not evidence that the product, i.e., chicken wings, was defective and inherently dangerous. *See* 7A Colo. Prac., Personal Injury Torts & Ins. § 24:13 (3d ed. Nov. 2024 update); *Osburn v. Ardmore Suzuki, Inc.*, No. 21-cv-00234-JWB, 2023 WL 1927991, at *8 (E.D. Okla. Feb. 10, 2023); *Loos v. Saint-Gobain Abrasives, Inc.*, No. 15-cv-00411-DLR, 2016 WL 5017335, at *4 (W.D. Okla. Sept. 19, 2016); *Armeanu v. Bridgestone/Firestone N. Am. Tire, LLC*, No. 05-cv-00619-JB-DJS, 2006 WL 4060665, at *12 (D.N.M. Sept. 26, 2006).

Here, Ms. Archuleta may not rest upon the allegations set forth in her Amended Complaint to defeat summary judgment. *Anderson*, 477 U.S. at 248; *Hansen v. PT Bank Negara Indonesia (Persero)*, 706 F.3d 1244, 1247 (10th Cir. 2013). Rather, she must set forth specific evidence to show that there is a genuine issue of material fact. *Hansen*, 706 F.3d at 1247. Ms. Archuleta has not met this burden, and accordingly, summary

---

[7] AMF does not identify which claim or claims it characterizes as "product liability." [Doc. 76 at 10; Doc. 78 at 10–11]. Thus, the Court construes the argument only to apply to Claim 6 entitled "Strict Product Liability – Defendant AMF Bowling." [Doc. 34 at 17–18].

judgment in favor of Defendant and against Plaintiff on Claim 6 is respectfully **GRANTED**.

### III.    PLA

Second, in the alternative, Defendant argues that the PLA explicitly preempts Plaintiff's common law negligence claims. [Doc. 76 at 10–12]. Defendant seeks summary judgment on Claims 2, 3, 4, 5, and 9 as "a matter of law" because they are common law negligence theories that cannot be asserted under the PLA. [*Id.* at 12]. Plaintiff does not dispute that if the PLA applies, Plaintiff's "various negligence claims do not apply." [Doc. 77 at 20]. Indeed, Ms. Archuleta does not appear to argue that the PLA does not apply, but rather that AMF may not argue that the PLA preempts her common law negligence claims and simultaneously argue that her cause of action is not viable under the PLA. [*Id.* at 19–20].

Under the PLA, a landowner is liable for injuries occurring on its property "by reason of the condition of such property, or activities conducted or circumstances existing on such property." Colo. Rev. Stat. § 13-21-115(3). It is well-established in Colorado that the PLA exclusively governs the duties landowners owe to those injured on their property, *Vigil v. Franklin*, 103 P.3d 322, 328 (Colo. App. 2004), and a "plaintiff may recover against a landowner only as provided under the statute, and not under any common law theory," *Wilson v. Marchiondo*, 124 P.3d 837, 840 (Colo. App. 2005); *see also Thornbury v. Allen*, 991 P.2d 335, 340 (Colo. App. 1999) ("A plaintiff may recover against a landowner only pursuant to § 13-21-115 . . . and not under any other theory of negligence, general[] or otherwise."). Colorado courts recognize that the PLA preempts common law negligence claims. *Vigil*, 103 P.3d at 328 ("[T]he plain language [of the PLA] preempts prior common law theories of liability."). Therefore, the Court respectfully agrees with the Parties that

Plaintiff's common law negligence claims are preempted by the PLA.

However, while the PLA preempts common law negligence claims, it does not necessarily preempt statutory negligence claims. *Tavernetti v. Coogan*, No. 20-cv-00853-STV, 2020 WL 5321274, at *4, *6 (D. Colo. Sept. 4, 2020) (allowing a claim for statutory breach of warranty of habitability to proceed while dismissing a common law negligence claim based on the PLA). Legislative history further demonstrates that the Colorado General Assembly intended for the PLA to preempt common law tort claims, not statutory claims. *Gangemi v. AMF Bowling Ctrs., Inc.*, 722 F. Supp. 3d 1170, 1174–75 (D. Colo. 2024) (discussing the creation and legislative history of the PLA).

***Claims 2, 3, and 4.*** It is well settled in Colorado that prior to the PLA, negligence claims against landowners arose out of common law, and the PLA abrogates common law negligence claims against landowners. *Vigil*, 103 P.3d at 328; *Stone v. Life Time Fitness, Inc.*, 411 P.3d 225, 228 (Colo. App. 2016) ("[I]t is well established that the PLA abrogates common law negligence claims against landowners."). Similarly, Colorado courts also recognize claims for negligent hiring, training and supervision as common law claims. *Westin Operator, LLC v. Groh*, 347 P.3d 606, 612 (Colo. 2015) (laying out the four elements of a claim for negligent hiring and training); *Keller v. Koca*, 111 P.3d 445, 448 (Colo. 2005) ("To establish liability, the plaintiff must prove that the employer has a duty to prevent an unreasonable risk of harm to third persons to whom the employer knows or should have known that the employee would cause harm."). Further, Colorado courts recognize a claim for negligent misrepresentation as a common law claim. *Keller v. A.O. Smith Harvestore Prods., Inc.*, 819 P.2d 69, 73 (Colo. 1991) (negligent misrepresentation is a tort claim based "not on principles of contractual obligation but on

12

principles of duty and reasonable conduct").

Plaintiff does not reference any statutory provisions with respect to Claims 2, 3, or 4. *See* [Doc. 34 at ¶¶ 63–94]. Instead, Plaintiff alleges that Defendant owed a duty to her, [*id.* at ¶¶ 65, 79, 89], Defendant breached that duty, [*id.* at ¶¶ 67, 87, 93], and the breach was a proximate cause of Plaintiff's injuries, [*id.* at ¶¶ 73, 86, 93–94]. The Court respectfully concludes that Claims 2, 3, and 4 are common law negligence claims that are preempted by the PLA.

***Claim 5.*** Plaintiff's negligence per se claim, Claim 5, is asserted under the Colorado Retail Food Establishment Rules and Regulations, 6 CCR 1010-2 et seq. [Doc. 34 at ¶¶ 95–107]. The Colorado Supreme Court has clearly stated that "[t]he language of the [PLA] makes clear that a party may no longer bring a negligence per se claim against a landowner to recover for damages caused on the premises." *Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 574 (Colo. 2008). Accordingly, the Court concludes that Claim 5 is a common law claim that is preempted by the PLA.

***Claim 9.*** Respondeat superior is a long-recognized doctrine that allows an employer to be liable for the acts of an employee. *Moses v. Diocese of Colo.*, 863 P.2d 310, 329 (Colo. 1993) ("The agency doctrine of vicarious liability is based on the theory of respondeat superior which postulates that a master may be liable for the acts of an agent acting on the master's behalf."). The Colorado Supreme Court has not specifically addressed how respondeat superior relates to the PLA. *See Larrieu v. Best Buy Stores, L.P.*, 303 P.3d 558, 564 n.8 (Colo. 2013) (stating that the court would "leave for another day the question of how theories such as respondeat superior and vicarious liability relate to [PLA]"). Indeed, respondeat superior is best understood as a theory that imputes

13

substantive liability of an employee to the employer, *see Daly v. Aspen Ctr. for Women's Health, Inc.*, 134 P.3d 450, 452 (Colo. App. 2005), rather than an independent cause of action, *cf. Gardner v. United States*, 316 F. Supp. 3d 1308, 1322 (D. Utah 2018).

Plaintiff pleads the four elements of a common law negligence claim: duty, breach of duty, causation, and damages within Claim 9. [Doc. 34 at ¶¶ 140–47]. The analysis of the Colorado Court of Appeals in *Rieger v. Wat Buddhawararam of Denver, Inc.* is instructive. 338 P.3d 404, 411 (Colo. App. 2013). In *Rieger*, the Colorado Court of Appeals reviewed the legislative history of the PLA and reiterated the clear mandate that the PLA was designed to abrogate common law duties in premises liability. *Id.* at 410. The court in *Rieger* did not express or extend a rule discussing respondeat superior and the PLA broadly, but observed that analogous case law from other states found that the common law doctrine of respondeat superior was precluded by their statutory tort schemes. *Id.* at 412 (citing *Bishop v. GenTec Inc.*, 48 P.3d 218, 221 (Utah 2002)). Therefore, this Court concludes that Claim 9 is preempted by the PLA.

Accordingly, summary judgment in favor of Defendant and against Plaintiff is appropriate on Claims 2–5 and 9.

## IV. The Allergen as a Condition Under the PLA

Third, again in the alternative, Defendant argues that the dangerous condition Plaintiff alleges, the contaminated food item, does not support a claim under the PLA. [Doc. 76 at 12–14]. Defendant relies on *Gangemi* for the proposition that the allegedly contaminated food caused Plaintiff's injury, contaminated food cannot be a condition of the Premises, and therefore Plaintiff cannot raise a claim under the PLA. [*Id.* at 13–14]. Defendant cites no other case law in support of its argument. *See* [*id.*]. Plaintiff's

14

Response does not directly address Defendant's argument. See [Doc. 77]. Like in *Gangemi*, this issue raises a question of law, not an issue of fact—and accordingly, AMF bears the burden of demonstrating that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

Defendant fundamentally misreads *Gangemi*. In *Gangemi*, a court in this District concluded the PLA did not preempt a claim for a statutory claim for an implied breach of warranty of merchantability. 722 F. Supp. 3d at 1175. Nowhere did the *Gangemi* court suggest that a claim under the PLA could not go forward based on contaminated food. Instead, the *Gangemi* court unequivocally stated: "[t]his case will go forward on Plaintiff's two claims: 1) violation of the Colorado Premises Liability Act, Colo. Rev. Stat. § 13-21-115, and 2) strict liability—breach of implied warranty of merchantability." *Id.* at 1176. Accordingly, Defendant's Motion for Summary Judgment is respectfully **DENIED in part** to the extent it seeks dismissal of Plaintiff's PLA claim on this basis.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1) AMF Bowling Centers, Inc.'s Motion for Summary Judgment [Doc. 76] is **GRANTED in part** and **DENIED in part**;

(2) Summary judgment is **ENTERED** in favor of Defendant AMF Bowling Centers, Inc. and against Plaintiff Natalie Archuleta on Claims 2–6 and 9; and

(3) Summary Judgment is **DENIED** as to Claim 1 and Claim 8;

(4) Plaintiff shall **SHOW CAUSE** as to why Claim 7 should not be dismissed as duplicative of Claim 8 no later than **Thursday September 25, 2025**, and

(5) A telephonic Status Conference is **SET** for **November 12, 2025** at **1:30pm**, for purposes of setting the trial date and Final Pretrial/Trial Preparation Conference. The Parties shall participate using the following dial-in information: **571-353-2301; Access Code: 783456374**.

DATED: September 18, 2025

BY THE COURT:

_____
Nina Y. Wang
United States District Judge